**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROSENDO MANZANAREZ, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MADERA COLLECTION SERVICES,<br><br>Defendant. | Case No. 1:23-cv-00258-JLT-EPG<br><br>ORDER *SUA SPONTE* DISMISSING ACTION FOR LACK OF ARTICLE III STANDING; DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT<br><br>(Doc. 8) |

Rosendo Manzanrez brings this putative class action lawsuit against Defendant Madera Collection Services for its alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, in sending Plaintiff an undated collection of debt letter. Pending is Defendant's Motion to Dismiss. (Doc. 8.) For the reasons set forth below, the Court *sua sponte* determines that Plaintiff lacks Article III standing to prosecute this case. Defendant's motion is therefore **DENIED AS MOOT** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJDUICE**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of an allegedly unpaid debt that Plaintiff owed to Valley Diagnostics for medical services underwent by Plaintiff. (Doc. 1 at ¶¶ 21–22.) After Plaintiff failed to pay its debt, Valley contracted with Madera to collect. (*Id.* at ¶ 24.) Madera is a collection services

1

agency, (*id.* at ¶ 25), which at some point in time, sent Plaintiff an undated collection letter regarding the debt that he owed to Valley. (*Id.* at ¶ 26.) "Despite the fact that the Letter lacks a date, the Letter states" how much Plaintiff owed as of "today" and "now." (*Id.* at ¶¶ 28–29.)

Due to the undated nature of the letter, Plaintiff alleges that he was "misled as to the status of the subject date," that "Letters that lack a date make them seem illegitimate," that Madera's attempt to "define the subject debt based on a nebulous date was suspicious, misleading, and out of character for a legitimate debt collection," which "cast a negative shadow over its debt collection practice in general," and that the undated nature of the letter "caused Plaintiff to be unable to determine whether the time frames provided for responding to the Letter met the statutory requirements" under the FDCPA. (*Id.* at ¶¶ 30–35.) Additionally, Plaintiff alleges that withholding a date on the letter equated to Madera withholding "a material term from Plaintiff which made it confusing for him to understand the nature of the subject debt." (*Id.* at ¶¶ 36, 83.) Plaintiff asserts that Madera's collection attempts appear "to improperly extort money from Plaintiff and coerce Plaintiff to pay." (*Id.* at ¶ 46.)

Furthermore, Plaintiff claims that Madera "failed to properly advise Plaintiff as to how interest would or could impact the account moving forward," and failed to inform Plaintiff that the amount of debt represented in the dunning letter "will increase over time, thus misstating the total amount and the character of the debt allegedly owed." (*Id.* at ¶¶ 48–49.) Plaintiff therefore alleges that he "incurred an informational injury as Defendant misstated the balance due by failing to include the fact that interest would continue to accrue from the date of the Letter and forward." (*Id.* at ¶ 64.) Due to this alleged confusion, Plaintiff represents that he "was therefore unable to make payment on the debt," and "would have pursued a different course of action were it not for [ ] Madera's violations." (*Id.* at ¶¶ 71, 84, 85.) Essentially, Plaintiff represents that Madera's improper, undated dunning letter "caused the non-payment," resulting in Plaintiff's "financial and reputational detriment." (*Id.* at ¶¶ 88.)

On February 20, 2023, Plaintiff filed this lawsuit against Madera on behalf of his putative class of all individuals residing in California that received an undated collection letter from Madera. (*Id.* at ¶¶ 11(a)–(f).) Arising out of this incident, Plaintiff asserts three causes of action

under the FDCPA. (*Id.* at 17–20.) Defendant filed its pending motion to dismiss for failure to state a claim, (Doc. 8), which the parties fully briefed thereafter. (Docs. 16, 17.)

## II. LEGAL STANDARD

### A. Subject-Matter Jurisdiction: Article III Standing

"Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). As such, "[i]t is to be presumed that a cause lies outside this limited jurisdiction. . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted); *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1256 (9th Cir. 2022) (same).

It is well-established that Article III "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (citing *Spokeo v. Robins*, 578 U.S. 330, 339 (2016)). Thus, even where the defendant fails to raise or challenge a claim or Complaint for lack of standing, "federal courts have a duty to raise, sua sponte, questions of standing before addressing the merits" of any claim. *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)); *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("[A] jurisdictional issue such as Article III standing may be raised *sua sponte* by the court at any time.") (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3) (requiring that "the court must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction.").

Article III of the Constitution limits the Court's authority to resolving "Cases" or "Controversies." U.S. CONST., art. III, § 2. "The doctrine of standing, among others, implements this limit on [the Court's] authority." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (internal quotation marks and citation omitted). The Supreme Court "has established that the irreducible constitutional minimum of standing contains three elements that a plaintiff must plead and— ultimately—prove." *Id.* (internal quotation marks and citation omitted). "First, the plaintiff must

have suffered an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citation omitted). "Second, the plaintiff's injury must be fairly traceable to the challenged action of the defendant, meaning that there must be a causal connection between the injury and the conduct complained of." *Id.* (internal quotation marks and citation omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citation omitted).

"'The party invoking federal jurisdiction bears the burden of establishing' the [three] elements of standing, and 'each element must be supported in the same way as any other manner on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (parenthetical in original) (citations omitted).

### III. DISCUSSION

While neither party has offered arguments regarding whether Plaintiff's injuries establish Article III, constitutional standing, the Court will do so on its own accord. *Iten*, 81 F.4th at 984; *Jones*, 74 F.4th at 1058; Fed. R. Civ. P. 12(h)(3).

A. <u>Concrete Injury</u>

Prior to the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), courts within this Circuit, including, occasionally, the Ninth Circuit itself, held that a violation of the FDCPA's statutorily conferred rights constituted a cognizable Article III injury in and of itself. *See, e.g.*, *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014) ("Although Tourgeman could not have suffered any pecuniary loss or mental distress as the result of a letter that he did not encounter until months after it was sent . . . the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications. The alleged violation of this statutory right . . . constitutes a cognizable injury

4

under Article III."); *Martinez v. Integrated Cap. Recovery, LLC*, 513 F. Supp. 3d 1219, 1225 (E.D. Cal. 2021) ("This Court agrees that a violation of the FDCPA can constitute a cognizable injury sufficient for standing."); *but see Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 n.1 (9th Cir. 2020).

In June 2021, the Supreme Court issued its Opinion in *TransUnion*, clarifying that a concrete injury is one that causes either a "physical or monetary injury to the plaintiff," or alternatively, if intangible, then it bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." 594 U.S. at 425. "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion," as well as harms "specified by the Constitution itself." *Id.* In enacting a federal statute, Congress "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," but Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 425–26 (internal quotation marks and citation omitted). In other words, "Article III standing [still] requires a concrete injury even in the context of a statutory violation," and "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]" *Id.* at 426. Thus, simply because Congress enacted the FDCPA, and Defendant has allegedly violated the statute, Plaintiff *still* bears the burden of demonstrating that he suffered a concrete injury. *Id.*

For this reason, the Court must agree with the three unanimous decisions stemming from the Southern District of New York—all confronted with nearly identical factual allegations to the present case—and all holding that the plaintiffs failed to demonstrate Article III injuries over their alleged emotional, financial, and reputational injuries, including their allegations of stress, anxiety, and confusion over receiving an undated collection letter. *See Merced v. Resurgent Cap. Servs., L.P.*, No. 22-CV-08327 (ALC), 2024 WL 1076519, at *3–*4 (S.D.N.Y. Mar. 12, 2024) (Carter, J.); *Braver v. Diversified Adjustment Serv., Inc.*, No. 7:22-CV-9390 (NSR), 2023 WL 8435825, at *2–*5 (S.D.N.Y. Dec. 5, 2023) (Román, J.); *Grinblat v. Frontline Asset Strategies,*

5

*LLC*, No. 7:22-CV-4467 (NSR), 2023 WL 5002474, at *3–*5 (S.D.N.Y. Aug. 4, 2023) (Román, J.).

To begin, the FDCPA does not confer a right of informational injury to Plaintiff. *Adams*, 836 F. App'x at 546 n.2. Rather, the law protects a consumer's right to "understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). "Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right of information per se." *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1259 (9th Cir. 2010) (emphasis in original). Moreover, "[t]he Ninth Circuit has not yet considered whether Plaintiff's allegations of intangible harm—emotional distress, loss of personal reputation, and loss of personal time—without more, suffice as concrete injury-in-fact for standing purposes in a FDCPA case in view of *TransUnion*." *Samano v. LVNV Funding, LLC*, No. 1:21-cv-01692-SKO, 2022 WL 1155910, at *3 (E.D. Cal. Apr. 19, 2022) (collecting cases). Nevertheless, the Court is convinced that these intangible harms do not suffice.

As an initial matter, loss of personal time must be tied to a more concrete injury. *See, e.g.*, *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 143–44 (S.D.N.Y. 2021) ("Courts have found wasted time to support standing when the wasted time is inextricably bound up in a cognizable injury.") (collecting cases). "A plaintiff who has failed to assert a concrete injury supporting any of his other claims cannot clear the standing threshold by claiming wasted time; to allow otherwise would enable litigants to 'manufacture standing merely by inflicting harm on themselves.'" *Id.* at 144 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).[1]

Moreover, conclusory allegations of standing are insufficient. *Lujan v. Nat'l Wildlife*

---

[1] The exception appears to occur in the data breach context. In agreement, the Central District of California recently opined that in data breach cases, "[f]ollowing *TransUnion*, courts across the country have recognized that harms that result as a consequence of a plaintiff's knowledge of a substantial risk of identity theft, including time and money spent responding to a data breach or emotion[al] distress can satisfy concreteness." *Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 WL 4291973, at *4 (C.D. Cal. May 8, 2023) (collecting cases); *see also Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *3 (S.D.N.Y. Oct. 27, 2022) ("In the data-breach context, the time and money spent to respond to a data breach may satisfy the injury-in-fact requirement.").

Otherwise, such "additional harms incurred become the type of self-inflicted injuries that cannot confer standing." *Medoff*, 2023 WL 4291973, at *5 (citing, in part, *Clapper*, 568 U.S. at 416).

*Fed'n*, 497 U.S. 871, 888 (1990) (disregarding "conclusory allegations" of standing affidavit); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 765 (9th Cir. 2018) ("Daniel lacks standing because her complaint makes only conclusory allegations . . ."); *Carrico v. City and Cnty. of S.F.*, 656 F.3d 1002, 1006 (9th Cir. 2011) ("This conclusory allegation is insufficient to establish standing.") (citation omitted). The Court therefore gives no weight to Plaintiff's allegation that he "suffer[ed] [a] concrete and particularized harm. . . because the FDCPA provides Plaintiff with the legally protected right not to be misled or treated unfairly with respect to any action for the collection of any debt." (Doc. 1 at ¶ 82.); *Daniel*, 891 F.3d at 767 (holding threadbare and "naked assertions fail our edict that a plaintiff may not rely on a bare legal conclusion to assert injury-in-fact[.]") (internal quotation marks and citation omitted). Nor does the Court afford weight to Plaintiff's barebones and conclusory allegations that he suffered financial and reputational harm, emotional harm and anxiety, and felt misled and suspicious over the dunning letter. (*Id.* at ¶¶ 33, 45, 58, 77, 88–89.); *compare with Samano*, 2022 WL 1155910, at *3 (determining Plaintiff had standing under FDCPA because he alleged "tangible, monetary harm" in a declaration attached to his opposition, by stating that he was "unable to get a mortgage loan to purchase a home because Defendant continued to report his debts as disputed") (internal quotation marks omitted).

As the *Braver* court correctly interpreted the *TransUnion* decision: "[D]issemination of a negative financial report may constitute a cognizable harm. *See TransUnion*, 141 S. Ct., at 2208–2209. However, Plaintiff fails to allege that Defendant disseminated his negative credit report, or if it did, to whom or how. (Doc. 1 at 14); *Braver*, 2023 WL 8435825, at *4 (emphases in original); *id.* ("Short of an individual or entity viewing the negative credit reporting, Plaintiff cannot claim that he suffered a concrete injury.") (citation omitted); *see also Merced*, 2024 WL 1076519, at *3 ("Plaintiff does not state anywhere in any submission to this Court that the credit report was disseminated to third parties.") (internal quotation marks and citation omitted).

On the other hand, "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Leonard v. McMenamins, Inc.*, No. 2:22-cv-00094-BJR, 2022 WL 4017674, at *4 (W.D. Wash. Sept. 2, 2022) (internal quotation marks and citation omitted); *Merced*, 2024 WL 1076519, at *3

("Plaintiff's allegations of 'emotional harm in the form of stress and anxiety, with physical harm manifesting in the form of lost sleep' are insufficient to establish standing.") (citations omitted). Similarly, experiencing "confusion does not constitute an actual harm to [Plaintiff's] concrete interests." *Adams*, 836 F. App'x at 547 (citing *Syed v. M-I, LLC*, 853 F.3d 492, 499–500 (9th Cir. 2017)).

Based upon the authorities cited here and because Plaintiff's "conclusory allegations raising speculative harms that fail to demonstrate he suffered a concrete, particularized injury," *Braver*, 2023 WL 8435825, at *4, the Court *sua sponte* **DISMISSES** Plaintiff's Complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

B. Leave to Amend

Courts have broad discretion to grant leave to amend a complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). In determining whether a plaintiff should be granted leave to amend, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020) (internal quotation marks and citation omitted). Generally, Rule 15 advises that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[i]t is the black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint," unless there is "a clear showing that amendment would be futile." *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) (internal quotation marks and citation omitted). The Court therefore **GRANTS** Plaintiff one last opportunity to amend his Complaint to show how he has adequately suffered a concrete and particularized injury in light of this opinion.

**IV. CONCLUSION**

Based upon the foregoing, the Court **ORDERS**:

(1) The Complaint (Doc. 1) is **DISMISSED WITH LEAVE TO AMEND**. **Within 21 days**, Plaintiff may file an amended complaint or a notice of dismissal. Failure to timely file either document will result in dismissal of his case with prejudice

pursuant to Rule 41(b).

(2) The motion to dismiss (Doc. 8) is **DENIED AS MOOT**.

IT IS SO ORDERED.

Dated: __**March 22, 2024**__                              _____
                                                                                         UNITED STATES DISTRICT JUDGE